Dan Stormer, Esq. [S.B. # 101967]
Brian Olney, Esq. [S.B. #298089]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
Emails: dstormer@hadsellstormer.com
        bolney@hadsellstormer.com

Matthew Strugar, Esq. [S.B. # 232951]
Law Office of Matthew Strugar
3435 Wilshire Blvd, Ste 2910
Los Angeles, CA 90010-2015
Email: matthew@matthewstrugar.com

Attorneys for Plaintiff
MICHAEL MOORE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MOORE,<br><br>            Plaintiff,<br><br>      v.<br><br>CITY OF LOS ANGELES; OFFICER RODRIGUEZ; OFFICER DARLING; SERGEANT MARTINEZ; OFFICER GUERRERO; OFFICER BOYKIN; OFFICER ESTRADA; OFFICER BEATY; OFFICER CHOI; and DOES 1-10.<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **42 U.S.C. § 1983, Fourth and Fourteenth Amendments: Unreasonable Search**<br>2. **42 U.S.C. § 1983, Fourth and Fourteenth Amendments: Unlawful Seizure**<br>3. **42 U.S.C. § 1983, Fourth and Fourteenth Amendments: Excessive Force**<br>4. **42 U.S.C. § 1983, Fourth and Fourteenth Amendments: Failure to Intervene**<br>5. **Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.***<br>6. **Unruh Act, Cal. Civil Code § 51**<br>7. **Bane Act, Cal. Civil Code § 52.1**<br>8. **Battery**<br>9. **Negligence**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMPLAINT FOR DAMAGES

## I.   INTRODUCTION

1.      On February 28, 2019, officers from the Los Angeles Police Department ("LAPD") tackled, beat, and arrested Michael Moore, a 62-year old blind African American man with a history of mental illness, in front of the doorway to his home. The officers then took Mr. Moore to the hospital for medical care.  While Mr. Moore lay strapped to a hospital gurney unable to move and surrounded by half a dozen hospital security guards and multiple LAPD officers, LAPD Officer Choi pulled a towel over Mr. Moore's face and cupped his hands over Mr. Moore's mouth and nose, blocking Mr. Moore's airway.  Mr. Moore cried out, "I can't breathe!  I can't breathe!! I can't breathe!!!"  Ignoring Mr. Moore's frantic pleas, Officer Choi continued suffocating Mr. Moore, covering Mr. Moore's face for a full minute even after Mr. Moore lost consciousness.

2.      The LAPD officers falsely claimed that Mr. Moore had assaulted the firefighters and officers.  Unable to afford bail and unwilling to plead guilty to crimes he did not commit, Mr. Moore spent more than four months in jail awaiting trial.  A jury acquitted Mr. Moore of all charges.

3.      Mr. Moore survived but remains deeply traumatized by the incident.  He is unable to sleep and afraid to go outside.  He lives in constant fear of the police.

## II.   JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1331 (federal question).

5.      Venue is proper in the United State District Court of the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located."  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

## III.   PARTIES

6.      Plaintiff Michael Moore is a legally blind African American man.  He is

currently 63-years old.  At all relevant times, he was and is a resident of the County of Los Angeles.

7.     Defendant City of Los Angeles ("the City") was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected City Council and/or their agents and officers.  The City is responsible for the actions, inactions, policies, procedures, practices and customs of the Los Angeles Police Department ("LAPD") and its agents and employees. At all relevant times, the City was and continues to be responsible for assuring that the actions of the LAPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

8.     Defendant Officer Rodriguez (42214) is an employee of the LAPD who, on information and belief, without justification, seized and beat Mr. Moore.

9.     Defendant Officer Darling (42231) is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.

10.    Defendant Sergeant Martinez (33929) is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.

11.    Defendant Officer Guerrero (41582), is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.

12.    Defendant Officer Boykin (38979), is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.

13.    Defendant Officer Estrada (32262) is an employee of the LAPD who, on information and belief, without justification seized, beat, and hobbled Mr. Moore.

14.    Defendant Officer Beaty (43521) is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.

15.    Defendant Officer Choi (42577), is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.  Defendant Officer Choi thereafter suffocated Mr. Moore into unconsciousness at the hospital.

16.     Defendant Officer DOE 1 is an employee of the LAPD who, on information and belief, without justification seized and beat Mr. Moore.  DOE 1 thereafter stood barely three feet from Defendant Officer Choi at the hospital yet failed to intervene while Defendant Officer Choi suffocated Mr. Moore into unconsciousness. Defendant Officer DOE I filmed Officer Choi's actions suffocating Mr. Moore on his/her body camera.  The identity of DOE 1 is presently unknown to Plaintiff.  Plaintiff will amend his complaint once he discovers the true identity of DOE 1.

17.     Defendants Rodriguez, Darling, Martinez, Guerrero, Boykin, Estrada, Beaty, Choi, and DOE 1 (collectively the "Officer Defendants") engaged in the acts or omissions alleged herein under color of state law.

18.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

19.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, each of the Defendants was the agent or employee of, and/or working in concert with, his/her co-Defendants and was acting within the course and scope of such agency, employment and/or concerted activity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

20.     Plaintiff is informed and believes and thereupon alleges, that at all times material herein, each Defendant was dominated and controlled by his/her co-Defendant and each was the alter-ego of the other.

21.     Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

COMPLAINT FOR DAMAGES                    -3-

22.     Plaintiff Michael Moore exhausted his administrative remedies by filing governmental tort claims with the City of Los Angeles on August 9, 2019.  By correspondence dated October 3, 2019, the City of Los Angeles rejected Mr. Moore's governmental tort claims.

### IV.   FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

23.     Michael Moore is a legally blind African American man.  He is currently 63-years old.  He lives in a second-floor apartment in South Los Angeles located at 1804 West 78th Street, #7.

24.     In his younger days, Mr. Moore worked in construction.  He was injured in a construction accident, seriously damaging his left eye.  Mr. Moore's vision continued to deteriorate, and an unsuccessful surgery to repair the damage left Mr. Moore without any vision in his eye.  Mr. Moore lost vision in his right eye several years later after he was beaten during a robbery attempt, leaving him blind in both eyes.

25.     In the early 2000s, Mr. Moore was selected to participate in the Business Enterprise Program, a government program providing training and support for legally blind individuals to operate food service businesses.  Upon completing the program, Mr. Moore was selected through a competitive process to manage the Inglewood Court Snack Stand.

26.     In 2007, Mr. Moore left the Inglewood Court Snack Stand to work at a non-profit community clinic with his life partner, Dr. Evelyn Clark.  At the clinic, Mr. Moore prepared grant applications, budget documents, and financial and operational reports.

27.     Around 2014, Dr. Clark became ill and passed away, and the clinic closed.

28.     In late 2018, Mr. Moore moved into his current home at 1804 West 78th Street, #7, in South Los Angeles.  Shortly after moving in, Mr. Moore founded a community organization to clean up the neighborhood and provide jobs for at-risk adults.  Mr. Moore named his organization Katie Moore Neighborhood Development, in honor of his mother.  Through his organization, Mr. Moore organizes frequent

neighborhood cleanup events, hiring work crews from local homeless shelters to pick up trash and clean sidewalks. Mr. Moore funds the cleanups with money he raises from neighborhood barbeques and covers any shortfalls out of his pocket. Mr. Moore is also developing plans to provide books and computer access to neighborhood children.

29.   In early 2019, Mr. Moore offered the use of his kitchen to his friend's niece, Camilla Slaughter. Unfortunately, Ms. Slaughter abused Mr. Moore's generosity and repeatedly left his kitchen in shambles. Mr. Moore asked Ms. Slaughter to clean up after herself, but the problems continued.

30.   On February 28, 2019, Mr. Moore told Ms. Slaughter that she could no longer use his kitchen. Ms. Slaughter flew into a rage. Mr. Moore took out his phone and threatened to call the police. Ms. Slaughter twisted Mr. Moore's wrist, snatched away his phone, and struck him in the face, cutting him above his left eye. Mr. Moore felt blood on his face.

31.   Mr. Moore began walking down the stairs to ask his downstairs neighbor to call the police. Ms. Slaughter shoved him from behind. Mr. Moore fell to his knees and slid down the stairs.

32.   Mr. Moore was scared and fearful for his safety. He picked himself up and walked back up the stairs to his apartment. Ms. Slaughter, who was still in Mr. Moore's apartment, threatened to tell her gang friends to kill Mr. Moore.

33.   At approximately 7:00 P.M., firefighters Farris (303950), Quinlan (390174), and Skier (33129) from the Los Angeles City Fire Department arrived at Mr. Moore's apartment in response to a call requesting medical aid. Mr. Moore heard the firefighters enter his apartment but did not know who they were because the firefighters did not announce themselves. Mr. Moore thought the intruders might be Ms. Slaughter's friends coming to kill him.

34.   Mr. Moore heard the firefighters' radio went off, and the firefighters then identified themselves to Mr. Moore as paramedics. The firefighters asked Mr. Moore if he was taking any medication. Mr. Moore responded that he has medication because he

is manic depressive, and that the firefighters' act of sneaking into his apartment had not made his condition any better. Mr. Moore told the firefighters that he was coherent, he did not want their help, and that he could take himself to the hospital. Mr. Moore told the firefighters to leave his apartment.

35.     Mr. Moore escorted the firefighters to his front door and attempted to close the door behind them. He felt someone hold the doorknob and block the door from closing. Mr. Moore tried again to push his door closed. He felt someone on the other side of the door shove back hard. The door flew open, striking Mr. Moore in the head.

36.     Mr. Moore asked, "Why are you blocking my door?" Dazed from the repeated impacts to his head, Mr. Moore staggered outside his door and onto the narrow walkway that runs from his second story apartment to the staircase leading to the ground below. The walkway leading to Mr. Moore's door is partially enclosed by the wall to Mr. Moore's apartment on one side and by metal railing on the other side. The view of the walkway from the ground below is partially obscured by the height, angle, and metal railing of the walkway. Mr. Moore has always treated the several feet immediately outside his front door as private and personal space. He had two dining room chairs and a garbage can placed outside his door and would often sit outside with his caretaker and talk and smoke cigarettes.

37.     Mr. Moore stood on the walkway about two feet in front of his door. He stood outside for several minutes. On information and belief, during this time the firefighters were outside the apartment building describing their interaction with Mr. Moore to LAPD officers who had arrived on scene. On information and belief, the firefighters told the LAPD officers that Mr. Moore is blind and has a history of mental illness. As the Officer Defendants prepared to assault and arrest Mr. Moore, Defendant Officer Rodriguez bragged to another officer that Mr. Moore is "like blind so, he doesn't even know we are out here."

38.     Mr. Moore heard a police car chirp its siren below and realized there were police officers downstairs. Mr. Moore thought he could ask the police to help protect

1   him.  Mr. Moore did not realize that he was already surrounded by police officers, who
2   had crept up the stairs without identifying themselves as police or even announcing
3   their presence.

4         39.   At approximately 7:10 P.M., Mr. Moore felt someone grab his wrist and
5   then his body.  The Officer Defendants grabbed Mr. Moore, violently twisted his wrist,
6   twisted his neck, slammed his head to the floor, beat him, and jammed their knees into
7   his back, causing Mr. Moore great pain.  Mr. Moore cried out, "Why are you arresting
8   me?  I am the victim!"  The Officer Defendants did not respond.  Defendants twisted
9   Mr. Moore's right arm again, handcuffed him, placed a hobble restraint on his legs, and
10  carried him down the stairs.  On information and belief, the Officer Defendants who did
11  not beat Mr. Moore had a realistic and reasonable opportunity to intervene to stop the
12  other Officers Defendants' unreasonable use of force but failed to do so.

13        40.   After handcuffing and hobbling Mr. Moore, the Officer Defendants picked
14  him up and carried him down the stairs.

15        41.   Mr. Moore was transported to California Hospital Medical Center in
16  downtown Los Angeles.  Defendant Officer Choi, Defendant Officer DOE 1, and at
17  least six hospital security guards strapped Mr. Moore to a hospital gurney, completely
18  immobilizing his arms and legs.  While Mr. Moore lay on the gurney unable to move,
19  Defendant Officer Choi pulled a towel over Mr. Moore's face and cupped his hands
20  over Mr. Moore's mouth and nose, blocking Mr. Moore's airway.  Mr. Moore cried out,
21  "Why is he suffocating me?  I can't breathe!  I can't breathe!!  I CAN'T BREATHE!!!"
22  Defendant Officer Choi ignored Mr. Moore's urgent pleas and continued holding the
23  towel over Mr. Moore's face.  Mr. Moore lost consciousness and his body went limp.
24  Defendant Officer Choi continued pressing his hands on Mr. Moore's face for another
25  minute, at one point repositioning his hands to press even more firmly on Mr. Moore's
26  mouth and nose.  Defendant Choi finally removed his hands but left the towel covering
27  Mr. Moore's face.  A healthcare worker eventually removed the towel.

28        42.   The incident was captured on body camera footage taken by Defendant

COMPLAINT FOR DAMAGES                    -7-

Officer DOE 1, who stood right next to Mr. Moore and barely three feet from Defendant Officer Choi. DOE 1 took no action to intervene.

43.     The LAPD falsely claimed that Mr. Moore had threatened the firefighters and an officer and resisted arrest. Unwilling to plead guilty to crimes he did not commit and unable to afford bail, Mr. Moore spent the next 139 days in jail awaiting his day in court. The case proceeded to trail and a jury acquitted Mr. Moore of all charges.

44.     The incident has deeply traumatized Mr. Moore. As a direct cause of the incident, Mr. Moore suffers extreme anxiety and paranoia. The slightest noise startles him; he freezes in fear when he hears wind coming through his door or the rustling of his window shades. He is afraid to walk down the street. He lives in constant fear of the police. Mr. Moore also suffers severe insomnia and is awakened by nightmares when he does fall asleep.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Unreasonable Search**

**(By Plaintiff Michael Moore Against All Defendants)**

45.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

46.     All of the acts of Defendants and the persons involved were done under color of state law.

47.     The acts of the Officer Defendants deprived Michael Moore of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, entering his curtilage without a warrant, exigency, emergency, or probable cause.

48.     Each of the Officer Defendants was both personally involved and an integral participant in the violation of Mr. Moore's constitutional rights. Each officer

was aware of the unlawful actions of the other Officers as they planned to enter and did enter Mr. Moore's curtilage; did not object to this violation of Mr. Moore's rights; and participated in the violation by performing police functions, including meaningful participation in the unlawful entry.

49.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Mr. Moore sustained and incurred damages including pain, suffering, and emotional injury.

50.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Michael Moore.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

51.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices or customs on warrantless entries, including warrantless entries on curtilage and in situations where the person has refused medical aid and does not require emergency care.

52.     The training policies of the City of Los Angeles were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including but not limited to warrantless entries, warrantless entries on curtilage, and warrantless entries where the person has refused medical aid and does not require emergency care.  The City of Los Angeles knew that its failure to adequately train its officers to interact with such individuals made it highly predictable that its officers would engage in conduct that would deprive persons such as Mr. Moore of their rights. The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

53.     Defendant City of Los Angeles' official policies and/or longstanding

practices or customs, including but not limited to its training policies, cause the deprivation of the constitutional rights of Michael Moore by Sergeant Martinez and Officers Rodriguez, Darling, Guerrero, Boykin, Estrada, Choi, Beaty, and DOE 1, and the other involved officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Moore's rights as to be the moving force that caused his injuries.

54.    LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  The City conducted an internal affairs investigation into the incident.  Upon information and belief, the City took no action in response to Mr. Moore's allegations and none of the involved officers have been disciplined.

<strong>SECOND CLAIM FOR RELIEF</strong>

<strong>42 U.S.C. § 1983</strong>

<strong>Fourth and Fourteenth Amendments: Unlawful Seizure</strong>

<strong>(By Plaintiff Michael Moore Against All Defendants)</strong>

55.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

56.    All of the acts of Defendants and the persons involved were done under color of state law.

57.    The acts of the Officer Defendants deprived Michael Moore of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, unlawfully seizing Mr. Moore on his curtilage without any lawful basis, probable cause, warrant, or any exception thereto.

58.    Each of the Officer Defendants was both personally involved and an integral participant in the violation of Mr. Moore's constitutional rights.  Each officer

1    was aware of the unlawful actions of the other Officers as they planned to arrest and did

2    arrest Mr. Moore on his curtilage; did not object to this violation of Mr. Moore's rights;

3    and participated in the violation by performing police functions, including meaningful

4    participation in the arrest.

5          59.    As a direct and proximate result of the aforementioned acts of the Officer

6    Defendants, Mr. Moore sustained and incurred damages including pain, suffering, and

7    emotional injury.

8          60.    In doing the foregoing wrongful acts, Defendants, and each of them, acted

9    in reckless and callous disregard for the constitutional rights of Michael Moore. The

10    wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious,

11    thus warranting the award of punitive damages against each individual Officer

12    Defendant (but not against the entity Defendant) in an amount adequate to punish the

13    wrongdoers and deter future misconduct.

14          61.    The Officer Defendants and any other involved officers acted pursuant to

15    expressly adopted official policies or longstanding practices or customs of the City of

16    Los Angeles. These include policies and longstanding practices or customs on false

17    arrests including arrests of individuals on their curtilage and arrests of individuals who

18    have refused medical aid and do not require emergency care.

19          62.    The training policies of the City of Los Angeles were not adequate to train

20    its officers to handle the usual and recurring situations with which they must deal,

21    including but not limited to arrests of individuals on their curtilage and arrests of

22    individuals who have refused medical aid and do not require emergency care. The City

23    of Los Angeles knew that its failure to adequately train its officers to interact with such

24    individuals made it highly predictable that its officers would engage in conduct that

25    would deprive persons such as Mr. Moore of their rights. The City of Los Angeles was

26    thus deliberately indifferent to the obvious consequences of its failure to train its

27    officers adequately.

28          63.    Defendant City of Los Angeles' official policies and/or longstanding

practices or customs, including but not limited to its training policies, cause the deprivation of the constitutional rights of Michael Moore by Sergeant Martinez and Officers Rodriguez, Darling, Guerrero, Boykin, Estrada, Choi, and Beaty, and the other involved officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Moore's rights as to be the moving force that caused his injuries.

64. LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions. The City conducted an internal affairs investigation into the incident. Upon information and belief, the City took no action in response to Mr. Moore's allegations and none of the involved officers have been disciplined.

### THIRD CLAIM FOR RELIEF

### Fourth and Fourteenth Amendments: Excessive Force

### (By Plaintiff Michael Moore Against All Defendants)

65. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth

66. All of the acts of Defendants and the persons involved were done under color of state law.

67. The acts of the Officer Defendants deprived Michael Moore of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, using excessive force during Mr. Moore's arrest and while he lay strapped to a hospital gurney. Specifically, the Office Defendants used unreasonable and excessive force when they tackled Mr. Moore, slammed his head against the floor, and beat him during his arrest. After Mr. Moore was transported to the hospital, Defendant Officer Choi used unreasonable and excessive force when he

suffocated Mr. Moore as Mr. Moore lay helpless and restrained on a hospital gurney. On information and belief, all of the Officer Defendants knew at the time that they used unreasonable and excessive force on Mr. Moore that he had a history of mental illness.

68.     Each of the Officer Defendants was both personally involved and an integral participant in the violation of Mr. Moore's constitutional rights.  Each officer was aware of the unlawful actions of the other Officers as they planned to use excessive force and did use excessive force against Mr. Moore in his apartment; did not object to this violation of Mr. Moore's rights; and participated in the violation by performing police functions, including meaningful participation in the excessive force.  Defendant DOE 1 was aware of the unlawful actions of Defendant Officer Choi as DOE 1 did not object to Defendant Officer Choi's violation of Mr. Moore's rights at the hospital; participated in the violation by performing police functions, including standing guard over Mr. Moore and video recording the incident on his or her body cam.

69.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Mr. Moore sustained and incurred damages including pain, suffering, and emotional injury.

70.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Michael Moore.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

71.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices or customs on excessive force, including in situations where the person suffers from mental illness, has refused medical aid and does not require emergency care, and/or an officer uses a towel and/or the officer's own hands to cover a person's face.

COMPLAINT FOR DAMAGES                    -13-

72.     The training policies of the City of Los Angeles were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including but not limited to the use of force during an arrest where the person suffers from mental illness, has refused medical aid and does not require emergency care, and/or an officer uses a towel and/or the officer's own hands to cover a person's face. The City of Los Angeles knew that its failure to adequately train its officers to interact with such individuals made it highly predictable that its officers would engage in conduct that would deprive persons such as Mr. Moore of their rights.  The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

73.     Defendant City of Los Angeles' official policies and/or longstanding practices or customs, including but not limited to its training policies, cause the deprivation of the constitutional rights of Michael Moore by Sergeant Martinez and Officers Rodriguez, Darling, Guerrero, Boykin, Estrada, Choi, Beaty, DOE 1, and the other involved officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Moore's rights as to be the moving force that caused his injuries.

74.     LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  The City conducted an internal affairs investigation into the incident.  Upon information and belief, the City took no action in response to Mr. Moore's allegations and none of the involved officers have been disciplined.

### FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**Fourth and Fourteenth Amendments: Failure to Intervene**

**(By Plaintiff Michael Moore Against All Defendants)**

75.     Plaintiff realleges and incorporates by reference each and every allegation

contained in the foregoing paragraphs as though fully set forth herein.

76.     All of the acts of Defendants and the persons involved were done under color of state law.

77.     The acts and omissions of the Officer Defendants deprived Michael Moore of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, failing to intervene in the unlawful actions of other officers, including the unlawful entry of Mr. Moore's curtilage, his false arrest, the use of excessive and unreasonable force during Mr. Moore's arrest, and the use of excessive and unreasonable force against Mr. Moore while he lay restrained on the hospital gurney.

78.     Plaintiff is informed and believes and thereon alleges that, at all relevant times herein mentioned, Defendants Rodriguez, Darling, Martinez, Guerrero, Boykin, Estrada, Choi, Beaty, and DOE 1 were present and had a realistic and reasonable opportunity to intervene and prevent the unlawful entry, false arrest, and the use of excessive force by their fellow officers against Mr. Moore in Mr. Moore's curtilage, but neglected to do so.

79.     Defendant Officer DOE 1 was present and had a realistic and reasonable opportunity to intervene and prevent the use of excessive force by Defendant Officer Choi against Mr. Moore in the hospital but neglected to do so.

80.     As a direct and proximate result of the aforementioned acts and omissions of the Officer Defendants, Mr. Moore sustained and incurred damages, including pain, suffering, and emotional injury.

81.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Michael Moore.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer

COMPLAINT FOR DAMAGES                    -15-

Defendant (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

82.     The Officer Defendants and the other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies and longstanding practices or customs on failing to intervene to stop warrantless entries including warrantless entries on curtilage and/or where the person has refused medical aid and does not require emergency care; false arrests including arrests of individuals on their curtilage and/or who have refused medical aid and do not require emergency care; and/or the use of unreasonable and excessive force including in situations where the person has a history of mental illness, has refused medical aid and does not require emergency care, and/or the officer uses a towel and/or the officer's own hands to cover a person's face.

83.     The training policies of the City of Los Angeles were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including but not limited to failing to intervene to stop warrantless entries including warrantless entries on curtilage and/or where the person has refused medical aid and does not require emergency care; false arrests including arrests of individuals on their curtilage and/or who have refused medical aid and do not require emergency care; and/or the use of unreasonable and excessive force including in situations where the person has a history of mental illness, has refused medical aid and does not require emergency care, and/or the officer uses a towel and/or the officer's own hands to cover a person's face.  The City of Los Angeles knew that its failure to adequately train its officers to intervene to stop such unlawful actions where they had a reasonable opportunity to do so made it highly predictable that its officers would fail to intervene to stop constitutional violations by their fellow officers that deprive persons such as Mr. Moore of their rights.  The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

84.     Defendant City of Los Angeles' official policies and/or longstanding

practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Michael Moore by Sergeant Martinez and Officers Guerrero, Boykin, Estrada, Choi, Beaty, and DOE 1 and the other involved officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Moore's rights as to be the moving force that caused his injuries.

85.     LAPD Chief Michel Moore, a final policymaker for the City of Los Angeles, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions, including their failure to intervene to stop the unlawful acts of their fellow officers.  The City conducted an internal affairs investigation into the incident.  Upon information and belief, the City took no action in response to Mr. Moore's allegations and none of the involved officers have been disciplined.

**FIFTH CLAIM FOR RELIEF**

**Title II of the ADA, 42 U.S.C. §§ 12131 *et seq*.**

**(By Plaintiff Michael Moore Against Defendant City of Los Angeles)**

86.     Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

87.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

88.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

COMPLAINT FOR DAMAGES          -17-

89.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

90.     The U.S. Department of Justice's regulations implementing Title II, 28 C.F.R. § 35.160, require public entities to take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others.

91.     At all times relevant to this action, Defendant City of Los Angeles was a public entity within the meaning of Title II of the ADA and provided programs, services, and activities to the general public.

92.     The U.S. Department of Justice, Civil Rights Division, Disability Rights section has published, "Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement," a document in which the U.S. Department of Justice provides guidelines in the interpretation of Title II of the ADA ("the Guidelines").  In the Guidelines, the Department of Justice notes that the ADA affects virtually everything that police officers and deputies do, including providing emergency medical services, arresting, booking, and holding suspects, and other duties.

93.     At all times relevant to this action, Mr. Moore was a qualified individual in that he was a citizen of the State of California and resident in the City of Los Angeles and thereby entitled and qualified to receive and participate in the programs, services, and activities provided by Defendant City of Los Angeles.

94.     At all relevant times, Mr. Moore was a person with disability within the meaning of Title II of the ADA.  Mr. Moore is blind, a physical impairment that substantially limits the major life activity of seeing.  Mr. Moore also suffers from depression and manic depressive disorder, mental impairments that substantially limit at least one major life activity, including interacting with others and thinking.

95.     On information and belief, at all times relevant to this action, Defendants

COMPLAINT FOR DAMAGES             -18-

were made aware of Mr. Moore's disabilities.  Specifically, the firefighters observed that Mr. Moore was blind when they entered his apartment, and Mr. Moore told the firefighters that he was manic depressive.  On information and belief, the firefighters then reported all of this information to the Officer Defendants before the Officer Defendants entered Mr. Moore's curtilage, beat him, and arrested him.

96.    Through the acts and omissions of Defendant City of Los Angeles and its agents and employees described herein, Defendant City of Los Angeles violated Title II of the ADA by excluding Mr. Moore from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services it provides to the general public.

97.    Specifically, the Defendant Officers wrongly arrested Mr. Moore because they misperceived the effects of his disabilities as criminal activity.

98.    The Defendant Officers also failed to reasonably accommodate Mr. Moore's disabilities, causing him to suffer greater injury in that process than other seized persons.  The Defendant Officers snuck up on Mr. Moore without announcing themselves and then tackled and beat him, causing Mr. Moore to suffer extreme physical and emotional harm.  The Defendant Officers also misinterpreted Mr. Moore's behaviors resulting from his mental illness as resistance and applied even greater force in response, causing Mr. Moore to suffer further physical and emotional harm.

99.    Plaintiff is informed, believes, and thereon alleges that Defendant City of Los Angeles and its agents and employees have failed and continue to fail to take into account and provide reasonable accommodations for persons with mental disabilities by failing to:

   a.    Adopt and enforce policies and procedures for communicating effectively, controlling, and interacting with persons with blindness and/or mental disabilities;

   b.    Train and supervise City of Los Angeles and LAPD officers and employees to communicate effectively, control, and interact with

COMPLAINT FOR DAMAGES                          -19-

persons with blindness and/or mental disabilities;

      c.    Train and supervise City of Los Angeles and LAPD officers and employees regarding the cognition and behavior of persons with blindness and/or mental disabilities; and

      d.    Train and supervise City of Los Angeles and LAPD officers and employees that they should not use force, or put themselves in positions where the use of force may become necessary without first notifying and obtaining the assistance of persons who have the requisite training and experience in communicating effectively with and controlling and interacting with persons with blindness and/or mental disabilities.

100.   Plaintiff is informed, believes, and thereon alleges that Defendant City of Los Angeles and its agents and employees committed the acts and omissions alleged herein intentionally and/or in reckless disregard of Mr. Moore's rights.

101.   As a direct and proximate result of the aforementioned acts, including but not limited to Defendant's deliberate indifference to the violation of Mr. Moore's federally protected rights, Mr. Moore suffered great physical and emotional pain and continues to suffer fear, anxiety, insomnia, humiliation, hardship, indignity, and severe mental and emotional anguish.

102.   Pursuant to 42 U.S.C. § 12133, Plaintiff is entitled to recover the compensatory damages described herein, and reasonable attorneys' fees and costs incurred in bringing this action.

## SIXTH CLAIM FOR RELIEF

### UNRUH CIVIL RIGHTS ACT, CIVIL CODE §§ 51 *et seq.*

### (By Plaintiff Michael Moore Against All Defendants)

103.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

104.   Section 51(b) of the California Civil Code provides in pertinent part: "All

persons within the jurisdiction of this state are free and equal, and no matter what their .
. . disability . . . are entitled to the full and equal accommodations, advantages,
facilities, privileges, or services in all business establishments of every kind
whatsoever."

105.   At all times relevant to this action, Mr. Moore resided in California.

106.   Mr. Moore is an individual with a disability under the Unruh Act.

107.   Mr. Moore is "otherwise qualified" to participate in or receive the benefit
of the City's services, programs, or activities.

108.   The City and the LAPD are business establishments within the meaning of
the Unruh Civil Rights Act whose facilities, programs, and activities are open to the
general public and are operated for the public benefit.

109.   Mr. Moore was excluded from participation in and denied the benefits of
the City's services, programs, or activities, or was otherwise discriminated against by
the City by reasons of his disabilities, such that Mr. Moore's disabilities were a
substantial motivating reason for the City's discrimination.

110.   The City was aware prior to arresting or using force on Mr. Moore that Mr.
Moore is blind and suffers from mental illness, including manic depressive disorder.
However, the City failed and refused to fail to take into account Mr. Moore's
disabilities and provide reasonable accommodations for Mr. Moore's disabilities.

111.   The City knew that it was substantially likely that Mr. Moore would be
harmed with respect to his rights but failed to act on that likelihood, and thus acted with
deliberate indifference, thereby intentionally discriminating against Mr. Moore.

112.   The City's acts and omissions against Plaintiff constitute discrimination
against him, intentional and through deliberate indifference, and violate the Unruh Civil
Rights Act, Cal. Civil Code §§ 51 *et seq.*, in that Mr. Moore has been denied full and
equal accommodations, advantages, facilities, privileges, and services provided to non-
disabled persons.

113.   As a direct and proximate result of the aforementioned acts, including but

not limited to Defendant's deliberate indifference to the violation of Mr. Moore's rights, Mr. Moore suffered great physical and emotional pain and continues to suffer fear, anxiety, insomnia, humiliation, hardship, indignity, and severe mental and emotional anguish.

114.   Because the City's acts and omissions violated the Americans with Disabilities Act, the City also violated the Unruh Act.  Cal. Civil Code § 51(f).

115.   As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's actual damages but no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as compensatory damages and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
## BANE ACT, CIVIL CODE § 52.1
### (By Plaintiff Michael Moore Against All Defendants)

116.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

117.   Article I, § 13 of the California Constitution and the Fourth Amendment to the United States Constitution guarantee the right of persons to be free from unlawful entries, false arrests, and the use of unnecessary and excessive force on the part of law enforcement officers.  The Officer Defendants, by engaging in the wrongful acts and failures to act alleged herein, intentionally and deliberately denied each of these rights to Mr. Moore by threats, intimidation, or coercion, to prevent Plaintiff from exercising his right to be free of unwanted medical care, unlawful searches and seizures including unlawful entry, false arrest, and/or excessive force, and/or in retaliation for Plaintiff's exercise of these rights, thus giving Plaintiff a claim for damages pursuant to Cal. Civ. Code § 52.1.  Specifically, the Officer Defendants (1) unlawfully made an unlawful entry into the curtilage of Michael Moore without probable cause, a warrant, or any

exigency, emergency, or other exception thereto (2) unlawfully seized Mr. Moore on his curtilage without probable cause, (3) used excessive force against Mr. Moore on his curtilage by tackling him, slamming his head on the ground, and beating him, and (4) used excessive force against Mr. Moore in the hospital by suffocating Mr. Moore to the point of unconsciousness while he was restrained on the hospital gurney.  The Officer Defendants intended by their actions to deprive Plaintiff of his enjoyment of his enjoyment of the interests protected by the right to be free of such conduct.  On information and belief, at the time of the Officers Defendants' unlawful actions allege herein, the Officer Defendants were aware that Mr. Moore has a history of mental illness. The Officer Defendants' unlawful actions were a substantial factor causing Mr. Moore to suffer severe injuries including pain, suffering, and emotional injury.

118.   The City of Los Angeles is vicariously liable for its officers' misconduct.

119.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Mr. Moore's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

120.   As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's actual damages but no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as compensatory and punitive damages and attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

## BATTERY

### (By Plaintiff Michael Moore Against All Defendants)

121.   Plaintiff realleges and incorporates by reference each and every allegation

1    contained above as though fully set forth herein.

2        122.   On information and belief, each of the Officer Defendants intentionally

3    touched Mr. Moore, and/or caused him to be touched, while seizing Mr. Moore on his

4    curtilage.  Defendant Officer Choi thereafter intentionally touched Mr. Moore, and/or

5    caused him to be touched, while suffocating Mr. Moore at the hospital.

6        123.   On information and belief, each of the Officer Defendants used

7    unreasonable force to arrest Mr. Moore.  Defendant Officer Choi used unreasonable

8    force to suffocate Mr. Moore after he had been arrested and strapped down on the

9    hospital gurney, unable to move.

10        124.   Mr. Moore did not consent to the Officers Defendants' uses of force, either

11    at his home or at the hospital.

12        125.   Mr. Moore was harmed by each use of force which has caused him to

13    suffer severe injuries including pain, suffering, and emotional injury.

14        126.   The Defendant Officers' uses of unreasonable force was a substantial

15    factor in causing Mr. Moore's harm.

16        127.   The City of Los Angeles is vicariously liable for the actions of the Officer

17    Defendants.

18        128.   In doing the foregoing wrongful acts, Defendants, and each of them, acted

19    with conscious disregard of Mr. Moore's rights.  Said Defendants' conduct was willful,

20    wanton, malicious, and oppressive, thereby justifying an award of exemplary and

21    punitive damages against each individual Officer Defendant (but not against the entity

22    Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in

23    the future.

24                          **NINTH CLAIM FOR RELIEF**

25                                **NEGLIGENCE**

26              **(By Plaintiff Michael Moore Against All Defendants)**

27        129.   Plaintiffs reallege and incorporate by reference each and every allegation

28    contained above as though fully set forth herein.

COMPLAINT FOR DAMAGES                    -24-

130.   The conduct of Defendants as set forth herein, was tortious in that Defendants breached their duty of care to Mr. Moore, an unarmed blind man besieged by at least eight armed police officers, when the Officer Defendants used excessive force to arrest Mr. Moore on his curtilage and while suffocating him at the hospital.

131.   As a result of the conduct of the Defendants as alleged herein, Mr. Moore sustained and incurred physical and emotional damages.

132.   The City of Los Angeles is vicariously liable for the actions of the Officer Defendants.

133.   In doing the foregoing wrongful acts, the Officer Defendants, and each of them, acted with conscious disregard of Mr. Moore's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.   For compensatory, general, statutory, and special damages against each Defendant, jointly and severally, in amounts to be proven at trial;

2.   Punitive and exemplary damages against individually named Defendants Rodriguez, Darling, Martinez, Guerrero, Boykin, Estrada, Choi, Beaty, and DOE 1 in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3.   Prejudgment interest;

4.   For costs and suit and reasonable attorneys' fees and costs as authorized by statute or law;

5.   For restitution as the Court deems just and proper;

6.   For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

COMPLAINT FOR DAMAGES                    -25-

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands trial by jury in this action.

3

4    Dated: April 1, 2020                Respectfully Submitted,

5                                        HADSELL STORMER RENICK & DAI LLP

6                                        LAW OFFICE OF MATTHEW STRUGAR

7

8                                        By:  ___/s/ Brian Olney_____
9                                             Dan Stormer
                                              Brian Olney
10                                       Attorneys for Plaintiff
                                         MICHAEL MOORE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES              -26-