COLLINSON, DAEHNKE, INLOW & GRECO
Laura E. Inlow, Esq., State Bar No. 130584
Email: laura.inlow@cdiglaw.com
Lenore C. Kelly, Esq., State Bar No.
Email: lenore.kelly@cdiglaw.com
21515 Hawthorne Blvd., Suite 800
Torrance, CA  90503
Phone:  424-212-7777
Attorneys for Defendant, OFFICER JUSTIN CHOI

MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Deputy City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
CORY M. BRENTE, Senior Assistant City Attorney
CHRISTIAN R. BOJORQUEZ, Deputy City Attorney (SBN 192872)
200 North Main St.
6th Floor, City Hall East
Los Angeles, CA 90012
Phone: 213-978-7023
Email: christian.bojorquez@lacity.org
Attorneys for DEFENDANTS CITY OF LOS ANGELES AND OFFICER ESTRADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MICHAEL MOORE,<br><br>                  Plaintiff,<br><br>     v.<br><br>CITY OF LOS ANGELES; OFFICER ESTRADA; OFFICER CHOI, AND DOES 1-10,<br><br>                  Defendants. | CASE NO. 20-CV-03053 MCS (AGRx)<br>*Hon Judge: Mark C. Scarsi;  Crtm 7C*<br>*Hon Magistrate Judge Alicia G. Rosenberg*<br><br>**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>PTC Date:   August 30, 2021<br>Time:          2:00 p.m.<br>Courtroom:  7C<br><br>Trial Date:  Sept. 21, 2021 |

Pursuant to U.S.D.C. Local Rules 16-4 and 16-4.1, Defendants hereby

submit the following Joint Memorandum of Contentions of Fact and Law.

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

## MEMORANDUM OF POINTS AND AUTHORITIES

## CLAIMS AND DEFENSES

### A.    Plaintiff's Claims

Based on the First Amended Complaint (FAC, Dkt. 52) and the recent dismissal of certain claims (Dkt. 89)[1], the following are Plaintiff's claims to be tried in this matter:

***Claim 1:***  42 U.S.C. § 1983 claim against the City of Los Angeles and Defendant Officers Choi and Estrada under the Fourth Amendment for excessive force.

***Claim 2:***  42 U.S.C. § 1983 claim against the City of Los Angeles and Defendant Officers Choi and Estrada for failure to intervene.

***Claim 3:***   A Bane Act claim against the City of Los Angeles and Defendant Officers Choi and Estrada.

***Claim 4:***  Battery under California state law against the City of Los Angeles and Defendant Officers Choi and Estrada.

***Claim 5:***  Negligence under California state law against the City of Los Angeles and Defendant Officers Choi and Estrada.

Although plaintiff has not dismissed the City of Los Angeles, there are no enumerated *Monell* causes of action such that there are no viable federal claims pending as to the City of Los Angeles. Moreover, the remaining causes of action do not mention or refer to the allegedly harmful language used by Officer Choi in the ambulance. In fact, the language in the ambulance is only mentioned in the "factual allegations" section of FAC. Similarly, the language in the ambulance and

---

[1] Plaintiff has dismissed all defendants except Officers Estrada and Choi and the City of Los Angeles. Plaintiff has also dismissed the First and Second Causes of Action for unlawful search and seizure as well as the Fifth and Sixth Causes of Action for ADA violations and violations of the Unruh Civil Rights Act. For the remaining causes of action of the Third for Excessive Force, Fourth for failure to intervene, Seventh under the Bane Act, Eighth for battery and Ninth for negligence, plaintiff has dismissed the portions of claims relating to actions occurring at his apartment at the time of his arrest.

the use of the towel in the emergency room were never included in plaintiff's Government Tort Claim to the City.

**B.     Elements for Each Claim**

*Claim 1* **(42 U.S.C. § 1983 claim for excessive force):**

1.     Defendant Officers' acts at the hospital were intentional;

2.     Defendant Officers acted under color of state law[2];

3.     Defendant Officers unreasonably seized Michael Moore's person by using unreasonable force against him at the hospital; and

4.     The acts of Defendant Officers were the cause of the deprivation of Plaintiff's rights protected by the Constitution or laws of the United States.

If a *Monell* claim has been properly asserted against Defendant City of Los Angeles only based on custom, practice, or policy:

1.     Defendants Choi and/or Estrada acted under color of state law;

2.     The acts of Choi and/or Estrada deprived plaintiff of his particular rights under the United States Constitution;

3.     Defendants Choi and/or Estrada acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the Defendant City of Los Angeles;

4.     Defendant City of Los Angeles's official policy or widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by Choi and/or Estrada; that is, the City of Los Angeles' official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that cause the ultimate injury.

---

[2] Defendants have stipulated that Officers Choi and Estrada were employees of the City of Los Angeles, were acting within the course and scop of their employment and were acting under color of state law at all relevant times.

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

*See* Ninth Circuit Manual of Model Jury Instructions 9.1, 9.2, 9.5 and 9.25 (2019).

If a *Monell* claim has been properly asserted against Defendant City of Los Angeles based on ratification:

1.      Defendant Officers acted under color of state law;

2.      The acts of Defendant Officers deprived the plaintiff of his particular rights under the laws of the United States Constitution;

3.      The City of Los Angeles acted under color of state law;

4.      The City of Los Angeles had final policymaking authority concerning the acts of Defendant Officers; and

5.      The City of Los Angeles ratified Defendant Officers' acts, that is, the City knew of and specifically made a deliberate choice to approve Defendant Officers' acts and the basis for it.

*See* Ninth Circuit Manual of Model Jury Instructions 9.7 (2019).

***Claim 2*** **(42 U.S.C. § 1983 claim for failure to intervene):**

Defendants Choi and/or Estrada are liable for failure to intervene if plaintiff has proven all the following four things by a preponderance of the evidence:

1.       Officers Choi and/or Estrada violated plaintiff's right to be free of excessive force while at the hospital.

2.      Defendants Choi and/or Estrada had a duty to intervene.

3.      Defendants Choi and/or Estrada had a reasonable opportunity to intervene, and

4.      Defendants Choi and/or Estrada failed to intervene.

*See* Ninth Circuit Manual of Model Jury Instructions 9.7 (2019).

///

///

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

*Claim 3* **(Bane Act Claim):**

To establish this claim, Michael Moore must prove all the following:

1.      That by threats, intimidation or coercion, Officers Choi and/or Estrada caused Michael Moore to reasonably believe that if he exercised his right to be free from excessive force at the hospital, they would commit violence against him, and that the defendant(s) had the apparent ability to carry out the threats;

2.      That Officers Choi and/or Estrada intended to deprive Michael Moore of his enjoyment of the interests protected by the right to be free of excessive force while at the hospital;

3.      That Michael Moore was harmed; and

4.      That the conduct of Officer Estrada and/or Officer Choi was a substantial factor in causing Michael Moore's harm at the hospital.

Citation to Authority:  CACI 2020 – Civil Jury Instructions 3066

*Claim 4* **(Battery under California state law):**

1.      That Defendant Officers Choi and/or Estrada intentionally touched Michael Moore or caused Michael Moore to be touched at the hospital;

2.      That Defendant Officers Choi and/or Estrada used unreasonable force to detain or overcome the resistance of Michael Moore at the hospital;

3.      That Michael Moore did not consent to the use of that force; and

4.      That Defendant Officers Choi and/or Estrada's use of unreasonable force at the hospital was a substantial factor in causing Michael Moore harm.

*See* California Civil Jury Instructions (CACI) – 1305 and 3921; *Hernandez v. City of Pomona* (2009) 46 Cal. 4th 501, 513.

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

*Claim 5* **(Negligence under California state law):**

    1.     That Defendant Officers Choi and/or Estrada were negligent at the hospital;

    2.     That Michael Moore was harmed at the hospital; and

    3.     That the negligence of Officer Choi and/or Officer Estrada at the hospital was a substantial factor in causing plaintiff's harm.

Negligence is the failure to use reasonable care to prevent harm to another.

    Officers Choi and/or Estrada could be negligent by acting or failing to act. They could be negligent if they did something that a reasonably careful person would not have done in the same situation or failed to do something that a reasonably careful person would do in the same situation.

    *See* California Civil Jury Instruction (CACI) – 400 and 401

**C.**    **Defendants' Evidence in Opposition to Each Claim**

*Claim 1* **(42 U.S.C. § 1983 claim for excessive force):**

    Multiple civilians called 911 on February 28, 2019, reporting that plaintiff Michael Moore was drunk, belligerent, combative and injured. One 911 caller reported that Moore had a knife. When the LAFD paramedics arrived at his apartment, they attempted to provide Moore with medical assistance as he was bleeding from his head and face from multiple lacerations. Moore used profanity, ordered the LAFD out of his apartment and then lunged at the paramedics with a kitchen knife. The LAFD backed out of the apartment and called for LAPD back up.

    LAPD Officer Karla Rodriguez and her partner Eric Darling were the first unit to arrive. The LAFD told them that Moore had lunged at them with a knife. They had been able to confiscate the knife and stated they wanted to prosecute Moore. The officers called for additional units and a supervisor. As they waited,

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

1    they watched Moore throwing the belongings of one of the 911 callers, a woman

2    who lived with Moore, to the ground from his second-floor apartment.

3        Once all officers arrived, including Officer Choi and his partner Officer

4    Estrada, they were briefed on the situation by Rodriguez and Darling. The officers

5    made a tactical plan to go upstairs and took Moore into custody. As Moore

6    physically resisted, did not comply with commands, and told the officers to "fuck

7    you bitches," the officers had to use firm grips, body weight and two sets of

8    handcuffs on Moore. Due to Moore's refusal to stand or walk, the officers placed

9    him on his stomach on the floor. As he continued to physically resist, the officers

10   placed the hobble on Moore's legs and carried him down the stairs to where the

11   LAFD was waiting with a gurney. Plaintiff sustained no physical injuries during

12   his arrest. Plaintiff has dismissed his claims of false arrest, unlawful search and

13   seizure, and excessive force at the time of his arrest. (Dkt. 89).

14       Officer Choi rode with plaintiff in the ambulance to California Hospital

15   Medical Center (CHMC) and Officer Estrada followed the ambulance in the patrol

16   car. No force was used in the ambulance. Officer Choi began by addressing Mr.

17   Moore as "sir." Plaintiff continued his use of profanities and he and Officer Choi

18   verbally jousted with each other calling each other "stupid," "dumb dumb" and

19   "dumbass." Plaintiff never complained to any of the paramedics in the ambulance

20   and seemed to enjoy the encounter with Officer Choi.

21       Once at CHMC, Moore continued using profanities and being combative.

22   The ER doctor, Dr. Palmisano, ordered that Moore be put in four-point restraints.

23   While hospital staff were applying the restraints, plaintiff kept lifting off the bed

24   and physically struggling. Dr. Palmisano was initially holding plaintiff's head still

25   as he had not yet had a CT scan to rule out any serious head, neck, or spine injury.

26   Plaintiff also had multiple lacerations and blood on his face. Dr. Palmisano placed

27   a single ply white towel on Moore's face and asked Officer Choi to hold it. Officer

28

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

1   Choi carefully held the towel in a way so as not to cover Moore's nose and mouth

2   for about 3 minutes. As soon as plaintiff was fully in restraints and had been given

3   a sedative, Officer Choi was instructed to release his contact with Moore which he

4   did. Per Dr. Palmisano's deposition testimony, Moore never lost consciousness and

5   suffered no injuries in the emergency room. No hospital employee or medical staff

6   ever told Officer Choi to remove the towel or stop holding plaintiff's head. In the

7   emergency room, plaintiff's blood alcohol was tested as almost three times the

8   legal limit.

9         Plaintiff disclosed no medical expert to testify as to any physical injuries he

10   allegedly suffered, including any loss of consciousness. Plaintiff did not complain

11   about the ambulance language or towel to the sergeant who presented to CHMC, to

12   any hospital personnel at CHMC, to the Watch Commander when he was

13   transferred to the 77th Jail on March 1, 2019, to any deputy personnel once he was

14   transferred to County jail, or to any medical or psychiatric personnel at jail at any

15   time during his incarceration. Plaintiff also failed to complain about the ambulance

16   language or towel in his Government Tort Claim for damages. Plaintiff did not

17   complain about the towel or ambulance language to any medical or psychiatric

18   personnel at Kaiser Permanente, his primary care providers, until after discovery

19   cut off in this case on May 7, 2021. Finally, plaintiff was interviewed by Internal

20   Affairs after he filed his Tort Claim and failed to mention the ambulance language

21   at all in his interview.

22         Plaintiff attempts to make *Monell* claims against the City of Los Angeles

23   within his excessive force and failure to intervene claims.  However, even if these

24   are considered as making valid *Monell* claims, the City's policies regarding use of

25   force and when an officer needs to intervene are sound and did not contribute to

26   plaintiff's alleged harm.

27         Finally, this cause of action does not reference the allegedly harmful

28   language used by Officer Choi in the ambulance whatsoever. This cause of action

-8-

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1    *only* refers to the actions by Officer Choi at the hospital as it is undisputed that no
2    force was used in the ambulance.

3

4    ***Claim 2* (42 U.S.C. § 1983 claim for failure to intervene):**

5        Defendants believe that the same evidence set forth above under Claim No.
6    1 supports their contention that Defendants are not liable under this claim.

7        In the hospital, Officer Choi was assisting the medical personnel by holding
8    the towel placed by the doctor and at the request of the doctor. As this was not
9    excessive or harmful, or a police action, there was no need for Officer Estrada to
10   intervene. Additionally, Officer Estrada testified he was unaware of the towel in
11   real time. Again, if considered a viable claim against the City, the LAPD policy on
12   the duty to intervene is sound and did not contribute to plaintiff's claimed harm.

13       With regard to the ambulance, this cause of action does not reference the
14   allegedly harmful language used by Officer Choi in the ambulance whatsoever.
15   The cause of action refers *only* to the actions by Officer Choi at the hospital.
16   Finally, as Officer Estrada was not present in the ambulance, he would have had no
17   opportunity to intervene even if, assuming arguendo, that any violation of Moore's
18   rights had occurred.

19

20       ***Claim 3* (Bane Act Claim):**

21       Defendants believe that the same evidence set forth above under Claim No.
22   1 supports their contention that Defendants are not liable under this claim. Again,
23   the language in the ambulance is not alleged in this cause of action. Moreover,
24   even if it was, the Bane Act provides that speech alone is not sufficient to
25   constitute a violation unless it involves a credible threat of violence. *Civ. Code*, §
26   52.1(k). This limitation forecloses a claim based on threats, intimidation, or
27   coercion involving a nonviolent consequence. *See, Cabesuela v. Browning-Ferris*
28   *Industries* (1998) 68 Cal.App.4th 101, 111. There has never been an allegation that

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

any of the language by Officer Choi in the ambulance involved threats or a violent consequence.

Moreover, Officer Choi did not intend to violate Moore's rights in the emergency room by way of threats, intimidation, or coercion as he was only assisting the medical personnel. Finally, neither the ambulance language nor the towel incident was referenced whatsoever in plaintiff's Government Tort Claim so this state claim fails.

### *Claim 4* (Battery under California state law):

Defendants believe that the same evidence set forth above under Claim No. 1 supports their contention that Defendants are not liable under this claim. This cause of action does not reference the alleged language in the ambulance whatsoever and no force was used in the ambulance.

### *Claim 5* (Negligence under California state law):

Defendants believe that the same evidence set forth above under Claim No. 1 supports their contention that Defendants are is not liable under this claim. This cause of action does not reference the alleged language in the ambulance. Finally, neither the ambulance language nor the towel incident was referenced whatsoever in plaintiff's Government Tort Claim so this state claim fails.

### D.   Defendants' Counterclaims and Affirmative Defenses

*First Affirmative Defense*:  Qualified Immunity (federal)

*Second Affirmative Defense*:  Qualified Immunities (state)

Cal. *Gov. Code*, § 815.2(b): Injuries by Employee Within Scope of Employment; Immunity of Employee

Cal. *Gov. Code*, § 820.2: Discretionary Acts

Cal. *Gov. Code*, § 820.8: Acts or Omissions of Others

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Cal. *Gov. Code* § 821.6: Immunity

*Third Affirmative Defense:* Contributory Negligence by plaintiff

*Fourth Affirmative Defense:* An allegation of verbal harassment or abuse does not state a constitutional deprivation under 42 U.S.C. section 1983 or state a cause of action under the Bane Act.

*Fifth Affirmative Defense:* State claims not contained in a Government Tort Claim must be dismissed.

*Sixth Affirmative Defense:* Plaintiff suffered no harm from the language in the ambulance.

*Seventh Affirmative Defense:* The force used by the defendant officers was objectively reasonable under the totality of the circumstances.

*Eighth Affirmative Defense:* No policy or procedure of the City of Los Angeles caused or contributed to plaintiff's claimed damages.

## E.   Elements to Affirmative Defenses

***First Affirmative Defense***: Qualified Immunity (federal)

1.  Whether Defendant Choi's and Estrada's alleged conduct at the hospital violated a constitutional right;

2.  If a constitutional right was violated at the hospital, whether the constitutional right was "clearly established."

*See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

***Second Affirmative Defense***: Qualified Immunities (state)

Cal. *Gov. Code*, § 815.2(b): Injuries by Employee Within Scope of Employment; Immunity of Employee

If the employee is immune from liability, Defendant City of Los Angeles also is immune from liability.

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

1   Cal. *Gov. Code*, § 820.2: Discretionary Acts

2      An employee of Defendant City of Los Angeles was exercising the

3   discretion vested in him.

4   Cal. *Gov. Code*, § 820.8: Acts or Omissions of Others

5      An employee of Defendant City of Los Angeles cannot be held liable for an

6   injury caused by the act or omission of another person.

7   Cal. *Gov. Code* § 821.6: Immunity

8      A public employee is not liable for injury caused by his instituting or

9   prosecuting any judicial or administrative proceeding within the scope of his

10  employment, even if he acts maliciously and without probable cause.

11

12  ***Third Affirmative Defense:*** Contributory Negligence

13  That Michael Moore was negligent; and

14  That Michael Moore's negligence was a substantial factor in causing his harm.

15  *See* CACI 405 (2009).

16

17  ***Fourth Affirmative Defense****:* An allegation of verbal harassment or abuse does not

18  state a constitutional deprivation under 42 U.S.C. section 1983 or state a Bane Act

19  claim.

20      Authority:  *Sims v. Johnston*, 2017 U.S. Dist. LEXIS 185354; *Freeman v.*

21  *Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997); *Gant v. Sunn*, 810 F.2d 923, 925 (9th

22  Cir. 1987); *Civ. Code*, § 52.1(j); *Cabesuela v. Browning-Ferris Industries* (1998)

23  68 Cal.App.4th 101, 111.

24

25

26  ***Fifth Affirmative Defense****:* State claims not contained in a Government Tort Claim

27  must be dismissed.

28

---

-12-

The factual circumstances alleged in the Government Tort Claim must correspond to those alleged in the subsequent lawsuit. If the complaint alleges a factual basis for recovery that is not fairly reflected in the written claim, the complaint is subject to a demurrer or a motion for judgment on the pleadings. *Fall River Joint Unified School Dist. v. Superior Court,* (1988) 206 Cal.App.3d 431.

Here, the City of Los Angeles and Officers Choi and Estrada were never on notice of Plaintiff's eventual claims regarding the events in the ambulance or at the hospital by virtue of his claim. Moore's Government Tort Claim does not include even passing reference to either of these events despite the requirement that the claim contain a "general description" of the injury and the statement of the "date, place and other circumstances of the occurrence." *Government Code* section 910; *Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 224; *More v. City of San Bernadino* (1931) 118 Cal.App. 732. Sufficient data should be included for investigation and consideration of the claim. *Dillard v. County of Kern* (1943) 23 C2d 271, 278. The claim should be drafted with sufficient factual breadth and character to support the legal theory on which the Plaintiff subsequently plans to sue if the claim is rejected. *Crow v. State* (1990) 222 Cal.App.3d 192, 201. This is underscored by the fact that plaintiff has now dismissed the claims for excessive force at the time of his arrest and false arrest, which were the *only* claims presented to the City in the Government Tort Claim.

***Sixth Affirmative Defense****:* Plaintiff was not harmed by the ambulance language. Plaintiff failed to ever complain about the language in the ambulance and his own psychology expert has testified that any mental or emotional distress suffered by Moore was due *only* to the events in the emergency room.

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

---

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*Seventh Affirmative Defense*: The testimony of defendants, defendants' witnesses and expert will establish that the force used by the defendant officers was objectively reasonable under the totality of the circumstances.

*Seventh Affirmative Defense*: The testimony of defendants, defendants' witnesses and expert will establish that no policy, practice of custom of the City of Los Angeles caused or contributed to plaintiff's claimed damages.

**F.     Defendants' Evidence in Support of Each Affirmative Defense**

Defendants believe that the same evidence set forth under Section C above supports their affirmative defenses in this matter.

**G.     Evidentiary Issues**

Defendants do not believe that they will have any evidentiary problems with their defense. However, Defendants believe that Plaintiff may have evidentiary problems with his claims, as he may try to introduce hearsay, irrelevant and other inadmissible evidence to support his claims. Defendants have filed the following motions in limine so that the Court may preclude some of the inadmissible evidence that Defendants anticipate that Plaintiff will attempt to introduce:

1.  To preclude all evidence and testimony on irrelevant, prejudicial and privileged matters including, but not limited to, a) any reference to any officer exceeding a computer generated parameter on uses of force, b) any officer's or the Department's prior or subsequent complaints, claims and lawsuits, c) any officer's employment application, d) preclude all evidence, references, argument and testimony by plaintiff, his attorney and witnesses regarding other national events and media involving law enforcement including but not limited to Black Lives Matter Protests, Ferguson, Michael Gardner, Ezell Ford, Freddie Gray, Brionna Taylor and George Floyd.

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

2.  To preclude all evidence and testimony that any aspect of this matter was racially motivated or due to plaintiff's mental health conditions,

3.  To preclude all evidence and testimony re the allegedly profane, disrespectful language used by Officer Choi in the ambulance,

4.  To exclude all evidence and testimony regarding the outcome of plaintiff's criminal charges or the amount of time he was incarcerated.

5.  To bifurcate the trial such that only the predicate question as to punitive damages should be decided in the first liability phase and the amount of such damages, if necessary, would be in the second phase.

## H.    Issues of Law

## Defendants Choi and Estrada Did Not Violate Plaintiff's Bane Act or Fourth Amendment Rights.

The Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. Const. Amend IV.  To be successful on his Fourth Amendment claims, Plaintiff must show that Defendants intentionally deprived him of his constitutional rights.  The law is clear that negligence alone is not sufficient to establish a constitutional violation. *Daniels v. Williams,* 474 U.S. 327, 328 (1986). Contrary to Plaintiff's contentions, Defendants did not use unlawful force on him. The facts show just the opposite.

To establish a claim of excessive force under the Fourth Amendment, Plaintiff must show that Defendant Choi used an amount of force that was objectively unreasonable under the totality of the circumstances from the perspective of a reasonable officer at the scene. *Graham v. Connor*, 490 U.S. 386, 397(1989).  To determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (citations omitted). "[T]he right to make an arrest or investigatory stop necessarily

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

1  carries with it the right to use some degree of physical coercion or threat thereof to

2  effect it."  *Id.*  In evaluating the government's interests, the court may consider

3  such factors as "the severity of the crime at issue, whether the suspect poses an

4  immediate threat to the safety of the officers or others, and whether he is actively

5  resisting arrest or attempting to evade arrest by flight."  *Id.*  "The 'reasonableness'

6  of a particular use of force must be judged from the perspective of a reasonable

7  officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* (*citing*

8  *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

9      In addition, the consideration of "reasonableness must embody allowance

10  for the fact that police officers are often forced to make split-second judgments--in

11  circumstances that are tense, uncertain, and rapidly evolving--about the amount of

12  force that is necessary in a particular situation." *Graham*, *supra*, 490 U.S. at 396-

13  97.  Here, the consideration includes whether the act of assisting the doctor as

14  requested even constituted a police activity such to be a "use of force."

15      Similarly, as Officers Choi and/or Estrada never intended to deprive Michael

16  Moore of his enjoyment of the interests protected by the right to be free of

17  excessive force while at the hospital, there is no viable Bane Act Claim.

18      As to potential claim against the Defendant City of Los Angeles based on

19  custom, policy and practice, Defendants believe that the same evidence set forth

20  above under Claim No. 1 supports their contention that Defendants are not liable

21  under this claim. In addition, there is no evidence of an unlawful custom, practice

22  or policy.

23

24  **At a Minimum, Defendants Choi and Estrada are Entitled To Qualified**

25  **Immunity.**

26      Defendants Choi and Estrada are also entitled to qualified immunity since

27  they did not violate Plaintiff's Fourth Amendment rights and their "conduct does

28  not violate clearly established statutory or constitutional rights of which a

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

-16-
**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1    reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

2    (1982).

3         Qualified immunity is a judicially created doctrine that stems from the

4    conclusion that few individuals will enter public service if such service entails the

5    risk of personal liability for one's official decisions. *See Wyatt v. Cole*, 504 U.S.

6    158, 167-68 (1992). Qualified immunity "spare[s] a police officer not only

7    unwarranted liability, but unwarranted demands customarily imposed upon those

8    defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

9    It is an "an immunity from suit rather than a mere defense to liability." *Saucier v.*

10   *Katz*, 533 U.S. 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526

11   (1985) (emphasis original). As a result, the Supreme Court has repeatedly stressed

12   the importance of resolving immunity questions at the earliest possible stage in

13   litigation. *Id*. at 201 (*quoting Hunter*, *supra*, 502 U.S. at 227).

14        Qualified immunity balances "two important, competing interests: the need

15   to hold public officials accountable for irresponsible actions, and the need to shield

16   them from liability when they make reasonable mistakes." *Morales v. Fry*, 873

17   F.3d 817, 822 (9th Cir. 2017). Qualified immunity protects officials "who act in

18   ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d

19   1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641

20   (1987). "The qualified immunity standard 'gives ample room for mistaken

21   judgments' by protecting 'all but the plainly incompetent or those who knowingly

22   violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)

23   (*quoting Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). "If the officer's

24   mistake as to what the law requires is reasonable . . . the officer is entitled to the

25   immunity defense." *Saucier*, *supra*, at 205.

26        The Ninth Circuit also has held that a police officer is entitled to qualified

27   immunity if a reasonable officer could have believed, even mistakenly so, that the

28   officer's actions were justified so long as the officer's conclusion is objectively

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

-17-

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

1    reasonable. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993);

2    *Franklin v. Fox*, 312 F.3d 423, 439 (9th Cir. 2002).

3        There are two prongs to the qualified immunity analysis. The courts may

4    exercise their discretion in deciding which prong to analyze first under the facts of

5    the case at bar. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first inquiry

6    is whether, taken in the light most favorable to the non-moving party, the facts

7    alleged show that the officer's conduct violated a constitutional right. *Saucier*,

8    supra, 533 U.S. at 201. Where the alleged conduct does not violate a constitutional

9    right, the officer is entitled to qualified immunity. *Id*. The law is clear that an

10   officer may use deadly force to apprehend a suspect where the suspect poses an

11   immediate threat to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11

12   (1985). To succeed on a Section 1983 action against a defendant in his individual

13   capacity, the plaintiff must present specific facts linking the individual defendant

14   to a constitutional violation. *Ortez v. Washington County*, 88 F.3d 804, 809 (9th

15   Cir. 1978).

16       Under the first prong, Defendants Choi and Estrada are entitled to qualified

17   immunity because they did not violate Plaintiffs' constitutional rights at the

18   hospital under the circumstances of the subject incident.

19       Even if the Court determines that there is a genuine material dispute as to

20   whether Plaintiff's constitutional rights were violated, the Court must consider the

21   second prong of the qualified immunity doctrine. Under the second prong, the

22   Court must determine whether the conduct violated a "clearly established statutory

23   or constitutional right of which a reasonable person would have known." *Hope v.*

24   *Pelzer*, 536 U.S. 730, 739 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

25   *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989). The plaintiff bears the

26   burden of proving that the constitutional right allegedly violated was clearly

27   established at the time of the alleged incident. *Cohen v. San Bernardino Valley*

28   *College*, 92 F.3d 968, 973 (9th Cir. 1996).

-18-

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

This line of inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition . . .," with the focus being on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, *supra*, 533 U.S. at 201.   The courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   "'[C]learly established' also should not be defined 'at a high level of generality.'"   *White v. Pauly*, 137 S. Ct. 548, 552 (2017).   "Clearly established" must be particularized to the facts of the case and "in light of the pre-existing law the unlawfulness must be apparent".   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Defendants Estrada and Choi are entitled to qualified immunity under the second prong because the constitutional right allegedly violated was not clearly established at the time of the alleged violation.

## Officer Choi Did Not Batter Michael Moore.

"A battery is any intentional, unlawful and harmful contact by one person with the person of another. . . . A harmful contact, intentionally done is the essence of a battery. A contact is 'unlawful' if it is unconsented to." *Ashcraft v. King*, 228 Cal.App.3d 604, 611 (1991) (citations omitted).   "Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present.  A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm." *Lowry v. Standard Oil Co. of California*, 63 Cal.App.2d 1, 6–7 (1944). Police officers are not treated the same as the ordinary assault and battery defendant.  State law battery and assault claims against police officers are analyzed under the same objectively reasonable standard set forth in *Graham, supra*, 490 U.S. at 396-97 and the plaintiff has the burden of proof in establishing excessive

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

force.  *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1273 (1998); Cal. *Pen. Code*, section 835(a); *Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009).

## Plaintiff Cannot Prove His Negligence Claim.

In order to prove a claim for negligent use of force at the hospital under California state law, Plaintiff must prove that Officer Choi acted unreasonably under the totality of the circumstances.  *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1093-1101 (Cal.App.1st. 2004); *Hayes v. County of San Diego*, 57 Cal.4th 622, 639 (Cal. Ct. 2013).  Michael Moore also is required to act reasonably and not resist detention by force or other means.  *See* CACI 405 and California *Penal Code* section 834a.

California law does not require officers to "choose the most reasonable action or the conduct that is least likely to cause harm" and "[l]aw enforcement personnel have a degree of discretion as to how they choose to address a particular situation." *Hayes, supra*.  As Defendant Choi acted reasonably in assisting the doctor as requested, Plaintiff cannot prove his negligence claim.

## Plaintiff Cannot Prove his Failure to Intervene Claim

As there was no violation of plaintiff's rights at the hospital, there was no duty by Officer Estrada to intervene. Moreover, Officer Estrada testified he was unaware of the application of the towel in real time. Officer Estrada was not present in the ambulance.

## Plaintiff Asserts no Viable Claims against the City of Los Angeles

Plaintiff's complaint sets forth no separate *Monell* claims against the City of Los Angeles. However, if the imbedded claims are considered, the policies and procedures of the City are sound, lawful, and did not cause or contribute to any of plaintiff's alleged harm. Moreover, the City of Los Angeles cannot be held liable

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

1    under *Monell* because Plaintiffs cannot prove that they were deprived of any of

2    their constitutional rights.  *See Monell v. Department of Social Services*, 436 U.S.

3    658 (1978).

4         To prevail on a *Monell* claim based on a custom, practice or policy theory,

5    Plaintiff must establish that the City's policy, custom or practice was the "moving

6    force" behind the violation.  *See Oklahoma v. Tuttle*, 471 U.S. 808, 818-20 (1985).

7    "At the very least there must be an affirmative link between the policy and the

8    particular constitutional violation alleged."  *Id*. at 823.  The City and the LAPD

9    also must act with deliberate indifference, which is a conscious choice to follow a

10   course of action among various alternatives.  *City of Canton, Ohio v. Harris*, 489

11   U.S. 378, 384 (1989).  Mere negligence, even gross negligence, is not "deliberate

12   indifference."  *Merritt v. County of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989)

13   (*citing Harris, supra*).

14        In addition, there must be a directive or order attributable to a municipal

15   policymaker.  *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).  The mere fact

16   that a policymaker defers to the discretionary decision of or agrees with the

17   opinions and recommendations of a subordinate does not turn the subordinate's

18   decision into official policy.  *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

19   In order for the actions of a lower-level employee to give rise to a *Monell* claim,

20   those actions must be persistent and widespread and the official policymaker must

21   take no corrective action.  *Monell*, *supra*, 436 U.S. 658; *Tuttle*, *supra*, 471 U.S.

22   808; *Praprotnik*, *supra*, 485 U.S. 112.

23        Plaintiff's burden in establishing causation is a heavy one.  *Harris*, *supra*,

24   489 U.S. 378.  There is no respondeat superior liability under 42 U.S.C. § 1983.

25   *Monell*, *supra*, 436 U.S. 658.  "Where a plaintiff claims that the municipality has

26   not directly inflicted an injury, but nonetheless has caused an employee to so do,

27   rigorous standards of culpability and causation must be applied to ensure that the

28   municipality is not held liable solely for the actions of its employee."  *Brown*,

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*supra*, 520 U.S. at 405.  Thus, the law is clear that Plaintiff cannot hold the City liable under *Monell* simply because it employs an alleged tortfeasor.

In addition, to succeed on their claim of *Monell* liability based on a ratification theory, Plaintiffs must prove that the final policymaker ratified Defendant Medina's unconstitutional acts.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Plaintiffs must show that the final policymaker "made a deliberate choice to endorse" an employee's unconstitutional actions.  *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).  Failure to overrule a subordinate's actions is insufficient to support a ratification claim.  *Christie, supra,* 176 F.3d at 1239. Ratification requires that the final policymaker knew that the employee actions violated the constitution and proof that the final policymaker specifically approved of the unconstitutional actions.  *Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir. 2004).

Several courts have rejected ratification-based liability on allegations that a police department determined, after an internal investigation, that an officer's conduct did not violate legal or department standards.  See, *Peterson v. City of Fort Worth Texas*, 588 F.3d 838, 848 (5th Cir. 2009) (holding there was no ratification of the use of excessive force where the Chief of Police determined after investigation that the officers complied with department policies); *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) (holding that the failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability under a ratification theory).  Additionally, two district courts in the Ninth Circuit: *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1188 (D. Haw. 2003) and *Garcia v. City of Imperial*, 2010 U.S. Dist. Lexis 105399 (S.D. Cal. Oct. 4, 2010), have rejected liability based on a ratification theory involving internal police investigations such as the one that allegedly occurred in this case.

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

COLLINSON, DAEHNKE, INLOW & GRECO
2515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

In *Kanae v. Hodson*, the plaintiff in an excessive force case sought to hold the city liable under *Monell* on the basis that the police chief, following an internal investigation, had informed the officer that his conduct had been found to be consistent with the police department's use of force regulations and that no adverse action would be taken against him. *Kanae*, 294 F.Supp.2d at 1186-88. According to the plaintiff, by accepting the conclusions of the internal board and following the recommendations of the board, the police chief had ratified the force used by the defendant officer. *Id*. at 1186-87. The district court disagreed, finding that "[t]he Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification." *Id.* at 1189 (citations omitted). The court concluded:

> "The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under §1983. If that were the law, counties might as well never conduct internal investigations and might as well always admit liability. But that is not the law. The law clearly requires "something more." *Id*. at 1191.

Moreover, in *Garcia v City of Imperial*, the court adopted the reasoning of *Kanae*, holding that a finding by the police chief that the officer's conduct was within policy did not constitute ratification because the facts in that case involved "no extreme facts or special circumstances that support[ed] a finding of ratification." *Garcia*, 2010 U.S. Dist LEXIS 105399 at *7.

As set forth above, the Defendant Officers did not violate any of Plaintiff's constitutional rights. Thus, the City of Los Angles cannot be held liable under *Monell* based on a ratification theory.

///

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

COLLINSON, DAEHNKE, INLOW & GRECO
21515 HAWTHORNE BLVD., SUITE 800
TORRANCE, CALIFORNIA 90503
TEL. (424) 212-7777 | FAX (424) 212-7757

**JURY TRIAL**

Defendants contend that the issues in this case are appropriate for a jury trial, and that a jury trial has been properly requested.

**ATTORNEYS' FEES**

The prevailing party on the federal claims may be entitled to recover attorney's fees under 42 U.S.C. § 1988.

**ABANDONMENT OF ISSUES**

Defendants have not abandoned any of their defenses and reserve their right to assert further defenses as Plaintiff's contentions become known.  Plaintiff has dismissed certain parties and claims as outlined in Docket Document No. 89.

**CONCLUSION**

Defendants reserve the right to supplement their contentions and file an amended memorandum of contentions of fact and law as the Court's rulings, Plaintiff's contentions, and/or other evidence, becomes known to Defendants.

Dated:  August 9, 2021          COLLINSON, DAEHNKE, INLOW & GRECO

                                By:  _Laura E. Inlow_
                                _____
                                Laura E. Inlow, Esq.
                                Attorneys for Defendant  OFFICER JUSTIN CHOI

Dated:  August 9, 2021          MICHAEL N. FEUER, City Attorney
                                KATHLEEN A. KENEALY, Chief Deputy City Atty
                                SCOTT MARCUS, Chief, Civil Litigation Branch
                                CORY M. BRENTE, Senior Assistant City Atty

                                By:   /s/  _Christian R. Bojorquez_
                                _____
                                CHRISTIAN R. BOJORQUEZ, Deputy City Attorney
                                Attorney for Defendants CITY OF LOS ANGELES,
                                and JESSE ESTRADA